UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARI RAMZAN,

        Plaintiff,

                              CASE NO. 03-CV-73550-DT
                              JUDGE AVERN COHN
                              MAGISTRATE JUDGE PAUL KOMIVES

  v.

R. RYDER, et al.;

        Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS JACKSON, MOHRMAN, DAMA, TANARIO, PUCKETT, AND
MEIER'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (Doc. Ent. 30)
and PLAINTIFF'S MOTION FOR EXTENSION OF TIME (Doc. Ent. 43)**

Table of Contents

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    Background and Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.    Defendants Jackson, Mohrman, Dama, Tanario, Puckett, and Meier's Dispositive Motion . . . . . 3
    C.    Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        1.    Fed. R. Civ. P. 12 ("Defenses and Objections") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        2.    Fed. R. Civ. P. 56 ("Summary Judgment") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    D.    Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        1.    A factual history is relevant to the issues presented by defendants' dispositive motion.   8
        2.    Only defendants Dama, Jackson, Mohrman, Tanario, Puckett, and Miers are properly
            before this Court. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        3.    The Court should not grant defendants' motion on the basis that plaintiff's claims against
            Mohrman, Dama, Tanario, and Meier, are "barred by the doctrine of *res judicata*."   .  20
        4.    The statute of limitations bars plaintiff's claims against defendants Jackson, Tanario,
            Meier, and Puckett. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        5.    Plaintiff has not exhausted his administrative remedies as to served defendants Jackson,
            Mohrman, Dama, and Puckett. At most, he has exhausted claims only as to served
            defendants Meier and Tanario. Therefore, the Court could dismiss plaintiff's complaint
            without prejudice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

I.    **RECOMMENDATION:**  The Court should grant defendants Jackson, Mohrman, Dama, Tanario, Puckett, and Meier's motion to dismiss and for summary judgment (Doc. Ent. 30) on the basis that plaintiff has failed to comply with 42 U.S.C. § 1997e(a) and should, therefore, dismiss plaintiff's complaint without prejudice.  Furthermore, the Court should moot plaintiff's November 4, 2004, motion for extension of time.  (Doc. Ent. 43).

II.    **REPORT:**

A.    **Background and Procedural History** [1]

Plaintiff Ari Ramzan is currently confined at Baraga Maximum Correctional Facility (AMF).[2]  During the events underlying his complaint, he was incarcerated at Huron Valley Men's Facility (HVM).  Compl. at 3 ¶ 3.  On September 25, 2003, plaintiff filed a pro se prisoner civil rights complaint against several named defendants, including Lintz, Schmedding, Mieirs (Meier), Smith, Tanario, Baptiste, Cerroni, Marshall, ten (10) Mobil Team [E.M.T.] members, Ryder, William Ray, Tessmer, Fritz Jackson, Carpenter, Thomas Mohrman, Commdure, Hall,

---

[1]On March 13, 2002, plaintiff filed a complaint in *Ramzan v. Lauters, et al.*, Case No. 02-CV-00166 (Grand Rapids) against Brickley, Carpenter, Cunningham, five Does, Jackson, Lauters, Orban, two Shepards, Sipke, and Withrow.  On September 16, 2002, Judge Enslen dismissed plaintiff's case without prejudice for failure to demonstrate exhaustion of administrative remedies.

On May 17, 2004, plaintiff filed a complaint in *Ramzan v. Louma, et al.*, Case No. 04-40098 (Flint), in which his claims are labeled "misuse of force", "denial of due process", and "denial of medical care".  Compl. at 4-10 ¶¶ 10-23, 10-12 ¶¶ 24-31, 12-14 ¶¶ 32-42.  On May 17, 2004, Magistrate Judge Whalen entered an order to transfer this case to the Western District of Michigan pursuant to 28 U.S.C. §§ 1391(b) and 1406(a).

On May 24, 2004, the case was transferred to the United States District Court for the Western District of Michigan where it was assigned Case No. 04-CV-00107 (Marquette).  Defendants include Bennick, two Burkes, Chappel, Chipman, Edlund, Hares, Hill, Leutzow, Luoma, Mohrman, Morgan, Niemela, and Perry.  On December 17, 2004, Judge Enslen entered judgment dismissing plaintiff's action without prejudice for failure to exhaust administrative remedies.

[2]See www.michigan.gov/corrections, "Offender Search".

2

and Damas (Dama)[3].  Compl. at 3-4 ¶¶ 4-9.  Among the forms of relief plaintiff seeks are declaratory judgments, injunctions, compensatory damages, discovery orders, appointment of counsel, and any other relief to which plaintiff is entitled.  Compl. at 14-17.  Plaintiff also seeks expungement of his institutional record.  Compl. at 18.

On October 27, 2003, Judge Cohn entered an order dismissing plaintiff's claims against defendants Ryder, Ray, and Tessmer.

**B.    Defendants Jackson, Mohrman, Dama, Tanario, Puckett, and Meier's Dispositive Motion**

On January 23, 2004, defendants Jackson, Mohrman, Dama, Tanario, Puckett, and Meier[4] filed a motion for dismissal and for summary judgment in which they argue that (1) "this action is barred by the doctrine of *res judicata*[;]" (2) "[p]laintiff's action is barred by the statute of limitations[;]" (3) "[p]laintiff's claims are barred as an improper collateral attack on his prison disciplinary conviction and are not cognizable under 42 U.S.C. § 1983[;]" (4) "[t]he defendants are shielded by immunity[;]" and (5) "[p]laintiff failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a)."  Mtn. at 1 ¶ 2, Mtn. Br. at 4, 5, 6, 8.[5]

---

[3]Hereinafter, defendant John Damas will be referred to as defendant Dama, because that is how his last name is spelled in the instant motion.

[4]On January 16, 2004, defendant Meier filed a motion for enlargement of time in which to file a responsive pleading to coincide with the due date of the co-defendants.  (Doc. Ent. 29).  On May 5, 2004, I entered an opinion and order granting the motion.  (Doc. Ent. 35).

[5]On January 27, 2004, Judge Cohn referred all pretrial matters to me.  (Doc. Ent. 31).  Subsequently, plaintiff filed four motions for an extension of time within which to file a response to defendants' dispositive motion:

(1)    On March 24, 2004, plaintiff filed a motion for an enlargement of time within which to respond to defendants' dispositive motion.  (Doc. Ent. 32).  I granted this motion on April 23, 2004.  (Doc. Ent. 33).

(continued...)

On February 18, 2005, plaintiff filed exhibits in opposition to defendants' dispositive motion.  (Doc. Ent. 47 [Rsp. Ex.]).

## C.   Applicable Law

### 1.   Fed. R. Civ. P. 12 ("Defenses and Objections")

Federal Rule of Civil Procedure 12 sets forth rules regarding defenses and objections.  As to how defenses and objections should be presented, the rule states in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, . . . (6) failure to state a claim upon which relief can be granted[.]

---

[5](...continued)

(2)   On June 28, 2004, plaintiff filed a second motion for extension.  (Doc. Ent. 36).  On July 1, 2004, I granted the motion.  (Doc. Ent. 37).

(3)   On September 8, 2004, plaintiff filed a third motion for extension.  (Doc. Ent. 38).  I granted the motion on September 13, 2004, directing plaintiff to file a response by November 1, 2004.  This order cautioned plaintiff that failure to file a response by this deadline would result in defendants' motion being decided on the papers without a response.

(4)   On November 4, 2004, plaintiff filed a fourth motion for extension of time.  Plaintiff sought a 21 day extension.  He claimed to have received his legal property on October 28, 2004; complained of retaliatory interference by MDOC officers with his ability to use the legal property; and mentioned recovery from the scheduled removal of his wisdom teeth (Doc. Ent. 43).  On November 5, 2004, I entered an order requiring defendants to file a response to plaintiff's motion by November 19, 2004 and permitting plaintiff to file a reply within five (5) days of receipt of any response by defendants.  (Doc. Ent. 44).  Defendants filed a response on November 10, 2004.  (Doc. Ent. 45).  On December 3, 2004, plaintiff filed a reply.  Plaintiff requested that his motion be granted "for circumstances beyond [his] physical control[.]" He also stated that his "61 exhibits [were] on the way[.]"   (Doc. Ent. 46 at 4).  Notwithstanding the fact that plaintiff has not filed a responsive brief to the instant motion, the Court is in possession of plaintiff's February 18, 2005 exhibits (Doc. Ent. 47).  Therefore, the Court should enter an order deeming moot plaintiff's fourth motion for extension of time.  (Doc. Ent. 43).

4

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

"If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b).

In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that plaintiff can prove no set of facts supporting his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Plaintiff is not required to specifically set out the facts upon which he bases his claim. *See id*. at 47. Rather, "a short and plain statement of the claim" pursuant to Federal Rule of Civil Procedure 8(a)(2) gives defendant fair notice of plaintiff's claim and the grounds upon which it rests. *See id*.

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). The purpose of Rule 12(b)(6) is to give defendant the opportunity to test whether plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley*, 355 U.S. at 48. A dismissal under Rule 12(b)(6) is generally disfavored by courts, as it is a dismissal on the merits. 2A JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 12.07 (2d ed. 1995).

## 2.      Fed. R. Civ. P. 56 ("Summary Judgment")

Summary judgment, pursuant to Fed. R. Civ. P. 56, may be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> A fact is 'material' and precludes grant of summary judgment if proof of that fact
> would have [the] effect of establishing or refuting one of [the] essential elements
> of a cause of action or defense asserted by the parties, and would necessarily
> affect [the] application of appropriate principle[s] of law to the rights and
> obligations of the parties.

*Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citing *Johnson v. Soulis, Wyo.*, 542

P.2d 867, 872 (1975) (quoting BLACK'S LAW DICTIONARY 881 (6th ed.1979)). "In

evaluating a motion for summary judgment we view all evidence in the light most favorable to

Plaintiff . . . and assess the proof to determine whether there is a genuine need for trial." *Gantt v.

Wilson Sporting Goods Co.*, 143 F.3d 1042, 1045 (6th Cir. 1998) (citations omitted).[6]

The movant bears the burden of demonstrating the absence of all genuine issues of

material fact. *See Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The moving

party need not produce evidence showing the absence of a genuine issue of material fact.

Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out

to the district court – that there is an absence of evidence to support the non-moving party's

case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party discharges

---

[6]The Sixth Circuit cited both *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) in support of this
statement.

that burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine triable issue.  Fed. R. Civ. P. 56(e); *Gregg*, 801 F.2d at 861.

"Although the nonmoving party 'may not rest upon the mere allegations or denials' of his pleading, Fed. R. Civ. P. 56(e), a verified complaint . . . satisfies the burden of the nonmovant to respond." *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999).[7]  "[A] verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact."  *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).  However, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  *See also Hamilton v. Roberts*, No. 97-1696, 1998 WL 639158, *5 (6th Cir. Sept. 10, 1998) (unpublished) (personal knowledge required); *Daniel v. Cox*, No. 96-5283, 1997 WL 234615, *2 (6th Cir. May 6, 1997) (unpublished) (conclusory assertions are insufficient for purposes of surviving summary judgment); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (citing *Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969)) (cannot consider hearsay evidence).

"Demonstration of simply 'metaphysical doubt as to the material facts' is insufficient." *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992), citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  As the United States Supreme Courts stated in *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986), "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for

---

[7]Plaintiff signed his complaint under penalty of perjury.  *See* Compl. at 18; 25 U.S.C. § 1746 ("Unsworn declarations under penalty of perjury").

a jury to return a verdict for that party.  If the [non-movant's] evidence is merely colorable, or is

not significantly probative, summary judgment may be granted."  *Id.* at 246-250 (citations

omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586-587 (1986).  The standard for summary judgment mirrors the

standard for a directed verdict under Fed. R. Civ. P. 50(a).  *Anderson*, 477 U.S. at 250.

Consequently, a non-movant must produce evidence that would be sufficient to require

submission to the jury of the dispute over the fact.

**D.     Analysis**

**1.     A factual history is relevant to the issues presented by defendants' dispositive
motion.**

**a.     The facts underlying plaintiff's complaint began in 2000 while plaintiff was
incarcerated at HVM.**

As previously noted, plaintiff was incarcerated at HVM during the events underlying his

complaint.  Compl. at 3 ¶ 3.  Plaintiff's complaint states that defendants Schmedding, Lintz,

Miers, and Smith "were involved in a conspiracy to murder [him] culminating on" February 5,

2000; February 28, 2000; March 17, 2000; May 10, 2000; June 25, 2000; and July 15, 2000.

Compl. at 4 ¶ 11.

Allegedly, the conspiracy to commit murder began on February 5, 2000, when Sgt.

Eckerly, Schmedding, and Meiers threatened to murder plaintiff after locking him in cell B-104.

Compl. at 9 ¶ 20; Rsp. Ex. DD ¶ 2.  Apparently, the murder threats were made with a 44 caliber

handgun and were witnessed by prisoner McMillan.  Rsp. Ex. DD ¶ 2.[8]  On March 11, 2000,

_____

[8]Plaintiff refers to the affidavit of McMillan (#171955).  Compl. at 9 ¶ 20; Rsp. Ex. DD ¶ 2.
According to the MDOC website, this offender number is assigned to a Stacey McMillian.  *See*
(continued...)

prisoner Dekoven[9] heard Schmedding make the same threats.  On March 17, 2000, Schmedding,

via Dekoven, allegedly "threatened to kill [plaintiff] with a 44 caliber handgun[.]"  Rsp. Ex. DD

¶ 3.[10]  On May 10, 2000, plaintiff heard someone ("Bink-Bey") state that defendants

Schmedding, Lintz, Meier, Smith, and Tanario "had beat and raped him[.]" Compl. at 4-5 ¶ 11.

On May 25, 2000, defendant Meier threatened plaintiff.  On May 26, 2000, defendants

Schmedding, Meier, and Lintz threatened plaintiff.  Rsp. Ex. DD ¶ 4.  On June 12, 2000,

defendant Schmedding directly threatened to kill plaintiff and incited guards to ticket plaintiff.

Rsp. Ex. DD ¶¶ 5-6.  On June 25 and 28, 2000, plaintiff sent letters to the wardens and E. Brodus

in which plaintiff asked for a room change and/or explained the threats from unit 44 officers and

Schmedding.  Rsp. Ex. DD ¶ 7.  According to plaintiff, defendant Schmedding threatened

plaintiff's life on July 14, 2000; July 15, 2000; and July 16, 2000 after defendant Schmedding

moved plaintiff to cell C-118.  Plaintiff claims that his move to cell B-111 on July 17, 2000, was

E. Brodus' effort to cure the problems with Schmedding.  Rsp. Ex. DD ¶ 6.

Purportedly, the conspiracy ended on July 18, 2000, with attempted murder and stemmed

"into a conspiracy to obstruct [j]ustice and conceal a crime going to the present date with 3 years

of refusal of all requested evidence and multiple hostile acts and punishments in denial of due

---

[8](...continued)
www.michigan.gov/corrections, "Offender Search".  However, plaintiff has not provided the Court
with a copy of McMillian's affidavit.

[9]According to the MDOC website, offender # 145274 is assigned to Chad Dekoven.  *See*
www.michigan.gov/corrections, "Offender Search".

[10]In a letter dated November 2001, plaintiff wrote to Jack Dekoven regarding his statement
about the incidents of March 17, 2000, and July 18, 2000.  Rsp. Ex. R.6.

process." Compl. at 9 ¶ 20.[11]  Plaintiff describes a July 18, 2000, assault and the subsequent

actions of certain defendants.  Compl. at 5-8 ¶¶ 12-19.[12]  Plaintiff also describes an incident

involving defendant Tanario on July 18, 2000.  Compl. at 6 ¶ 16.  Allegedly, on the evening of

July 18, 2000, "the last 5 tickets of 15 false, retaliatory tickets were brought to punish the

Plaintiff."  Compl. at 10 ¶ 21.  It appears that these five tickets were as follows:  one for assault

and battery (hearing date 7/19/00), one for possession of dangerous contraband (dated 7/19/00),

two for destruction of state property (dated 7/19/00), and one for interference with the

administration of rules (dated 7/18/00).  Rsp. Ex. at C.1.  On July 19, 2000, the HVM SCC

placed plaintiff into administrative segregation.  Rsp. Ex. C.1.

 Plaintiff claims that the reports stating plaintiff attacked defendants on July 19, 2000, are

false.  Compl. at 6 ¶ 15, 7 ¶ 17, 8 ¶ 19, 13 ¶ 27.  A July 2000, HVM "MDOC Security

Classification Screen - Review" indicated a confinement level of II and a new management level

of IV.  R.U.M. Rudd approved a true security level of IV on July 19, 2000, and Richard Rider

approved an actual placement level of IV on July 25, 2000.  Rsp. Ex. B.

 On July 20, 2000, a ticket hearing was conducted by defendants Jackson and Carpenter.

Compl. at 8 ¶ 19.  Plaintiff claims that defendants Jackson and Carpenter heard only one ticket

---

[11]The period of February 5, 2000, to July 18, 2000, is also mentioned within plaintiff's claim for relief as to dismissed defendants Ray, Ryder, and Tessmer.  Compl. at 11 ¶ 22.

[12]A victim's statement of facts of July 18, 2000, is included in plaintiff's response exhibits. Rsp. Ex. A.  Also, plaintiff claims that, in addition to Perry, Patrick Lund (his cellmate during June and July 2000) may have witnessed the incident.  Plaintiff claims that Lund has been released.  Rsp. Ex. DD ¶ 8.

 According to the MDOC website, a person by the name of Patrick Lund (# 249846) was discharged.  *See* www.michigan.gov/corrections, "Offender Search".

when there were others.  Compl. at 10 ¶ 21.  Apparently, plaintiff's request to defendant Jackson

for the wing cameras from the evening of July 18, 2000, was denied.  Compl. at 11 ¶ 21.

**b.      Plaintiff was transferred to Michigan Reformatory (RMI) on July 25, 2000.**

On July 25, 2000, plaintiff "was transferred to RMI and placed into Administrative

Segregation."  Rsp. Ex. C.1.  Allegedly, plaintiff attempted to take his life on October 16, 2000,

"because of confusion and fear of more retaliation at RMI[.]"  Rsp. Ex. D.  On or about October

25, 2000, plaintiff received a ticket for assault and battery.  He received a ticket for threatening

behavior on or about November 2, 2000.  Rsp. Ex. C.1.

On or about March 16, 2001, plaintiff received tickets for disobeying a direct order (020)

and assault and battery (008).  Rsp. Ex. C.1.  On March 23, 2001, plaintiff was placed into

administrative segregation at RMI for disobeying a direct order (020) and assault and battery

(008).  Rsp. Ex. C.1.  The March 26, 2001, transfer order stated that transfer was "requested to

place prisoner at a level V facility due to RMI SCC recommendations."  Rsp. Ex. C.1.  An April

2, 2001, RMI "MDOC Security Classification Screen - Review" indicated a confinement level of

II and a true security level of V.  Rsp. Ex. C.

**c.      At some point, plaintiff was transferred to AMF.**

While at AMF, plaintiff submitted a complaint against defendants Lintz, Schmedding,

Miers (Meier), Smith, and Tanario to Michael Robinson of the Michigan State Police.  Rsp. Ex.

D.[13]  Among other things, the letter mentions February 5, 2000; March 12, 2000; May 16, 2000;

and July 15, 2000, requests to Brodus for replacement; threats to plaintiff and his family;

_____

[13]The letter is dated July 8, 2001, but plaintiff suggests it was sent on September 21, 2001.
Rsp. Ex. Index of Exhibits.

11

warnings from plaintiff's younger brother during phone calls (occurring between February 28 and March 5, 2000)[14] of danger to plaintiff; a description of the July 2000 alleged attack; and defendant Carpenter's response to plaintiff's requests at the ticket hearing. Plaintiff stated that the "wanton infliction of pain and intentional negligence" resulted in his placement in isolated segregation at RMI.

On or about October 24, 2001, Michigan State Police Inspector Bell conducted an interview. Allegedly, defendant AMF (C.F.A.) inspector Ezrow made a false statement at the interview to interfere with defendant Dama and the Michigan State Police Department investigations. Compl. at 9 ¶ 20; Compl. at 13 ¶ 28. On or about November 4, 2001, plaintiff wrote to defendant Dama (an MDOC Internal Affairs Section investigator) regarding his investigation. Rsp. Ex. F.[15] Plaintiff claims that a false felony charge and false weapons charges were brought against him at a November 2001, interview by defendant Dama. Compl. at 9 ¶ 20; Compl. at 10-11 ¶ 21.

On or about November 6, 2001, plaintiff went to ICF (Ionia Maximum Correctional Facility). Rsp. Ex. K.1. Plaintiff claims that when he arrived at ICF, "Sgt. Brown and three of his officers terrorized [plaintiff] . . . in the transfer holding cell and stole 200 pages of complaints and other legal work." Compl. at 9 ¶ 20. On November 13, 2001, plaintiff arrived at AMF from ICF for placement in administrative segregation. The MDOC Program Classification Report mentioned plaintiff's last major misconduct (in 2001 for disobeying a direct order), as well as an

---

[14]In Rsp. Ex. K.1, plaintiff claims his younger brother's life was threatened on or about February 29, 2000, and May 2000.

[15]Plaintiff describes this as his second letter to defendant Dama. Rsp. Ex. Index of Exhibits.

investigation regarding July 2001 possession of dangerous contraband (030) - razor blade.  Rsp. Ex. F.1.

On or about January 3, 2002, defendant Jack Hall apparently concluded that plaintiff's concern was "unfounded".  Rsp. Ex. K at 4.  In a letter dated January 23, 2002, plaintiff wrote to defendant Dama to provide him with forensic sketches and present him "with the opp[or]tunity to be forwarded a copy of the <u>indictment</u> [plaintiff had] produced."[16]  Plaintiff explained that he would send Dama the actual indictment papers before sending them to the Michigan State Police. Additionally, plaintiff claimed that he was writing to the OPH about his release to general population, mentioning a Step III grievance and a lawsuit.  Apparently, plaintiff thought that deputy Leutzo's[17] promise to release plaintiff to general population would be unfulfilled in light of plaintiff's classification sheet which mentioned Officers Nikko and Menards's major misconduct ticket "for a three inch piece of metal they planted in [plaintiff's] room in August." Furthermore, plaintiff stated that the meeting at ICF "was a lot less than productive[.]" Rsp. Ex. K.  According to plaintiff, defendant Dama did not respond to this letter.  Rsp. Ex. Index of Exhibits.

On February 11, 2002, defendant C.F.A. Inspector Burnett (at AMF) wrote plaintiff a Major Misconduct Report for interference with the administration of rules based on various dates.  Rsp. Ex. I.1; Mtn. Ex. C(1).  On February 25, 2002, a major misconduct hearing was held at AMF.  Defendant Hearing Officer Mohrman found plaintiff guilty of the charge interference

---

[16]Plaintiff describes this as his second letter to defendant Dama.  Rsp. Ex. Index of Exhibits. This exhibit appears to contain only the first of a multiple page January 23, 2002, letter.  Rsp. Ex. K.

[17]The Court assumes plaintiff is referring to Leutzow, a named defendant in Case No. 04-CV-00107 (Marquette).

with the administration of rules regarding a July 19, 2001, violation date.  The major misconduct

hearing report was given to R.U.M. D. Lesatz for delivery to plaintiff.  Rsp. Ex. I.1; Mtn. Ex.

C(2).

       In a typewritten letter dated February 24, 2002 (from AMF), from plaintiff to

Fitzsimmons, plaintiff acknowledged his receipt of the ticket hearing findings and the

investigative report; however, he claimed it had been altered and was rendered unusable.

Plaintiff sought another copy of the entire report in order to administratively appeal his ticket

hearing.  Rsp. Ex. M.1.  Apparently, (from AMF) plaintiff sent Fitzsimmons a handwritten

version of the same letter on March 11, 2002.  Mtn. Ex. E.

       On or about February 25, 2002, plaintiff sought a copy of the February 25, 2002, hearing

record regarding the February 11, 2002, ticket from defendant Mohrman, including a copy of the

Step I grievance.  Rsp. Ex. I.1.  Plaintiff's February 25 or 26, 2002, request for rehearing was

disapproved by hearings administrator Richard B. Stapleton on or about May 10, 2002.  Rsp. Ex.

I.1.  By an MDOC Memorandum (which plaintiff claims to have received at AMF on May 16,

2002), Stapleton informed plaintiff that his request for rehearing (regarding Misconduct Record

No. 030) was denied.  Rsp. Ex. P.1.

       On or about March 8, 2002, plaintiff wrote defendant Dama a five-page letter.  Rsp. Ex.

K.  Plaintiff stated he was "convinced that [Dama] need[ed] to make a more thorough

investigation."  Rsp. Ex. K at 1.  Plaintiff requested "for a th[i]rd time a . . . report from

[Dama's] findings."  Rsp. Ex. K at 2.[18]  He claimed that Dama is "capable of sending [plaintiff]

---

    [18]He requested "the investigation which was tainted by the AMF Inspector Ezrow or
'Burnett'[.]" Rsp. Ex. K at 3.

14

all twenty six attachments to [Dama's] report and [Dama's] findings."  Rsp. Ex. K at 4.  He

specifically requested the defendants E.M.T. response team, Tessmer, Ryder and/or Ray witness

statements; records regarding the warden's approval of transfer; the July 18, 2000, critical

incident reports; the three tickets he received on July 18, 2000; as well as the tickets read to him

on July 19, 2000.  Rsp. Ex. K at 2, 5.  Rsp. Ex. K.

In May 2002, Sgt. Hares (at AMF) issued plaintiff a Major Misconduct Report for

Threatening Behavior.  Rsp. Ex. E.  In a May 23, 2002, affidavit, Daniel Gundrum (#252606)

claimed to have witnessed an exchange between Hares and plaintiff.  In a May 24, 2002,

affidavit, Dominguez (#222910) claimed to have heard Hares' May 23, 2002, statement to

plaintiff.  In a May 25, 2002, affidavit, Dominguez (#222910)[19] claimed to have heard an

exchange between Hares and plaintiff.  Rsp. Ex. P.2.[20]

In a July 2002 letter (from AMF), plaintiff sought from Stapleton the names of the

hearing officers who were on rotation at HVM from July 17, 2000 to July 20, 2000.  (Rsp. Ex.

V.1).

Apparently, plaintiff's parole hearing was scheduled for July 30, 2002.  Rsp. Ex. P.1.

_____

[19]According to the MDOC website, this offender number is assigned to a Raul Dominguez.
*See* www.michigan.gov/corrections, "Offender Search".

[20]In a letter dated May 23, 2002, (from AMF), plaintiff wrote to Care of the American
Friends Service Committee.  Rsp. Ex. K.1.  Apparently, Mr. Care had provided plaintiff with a list
of lawyers in July 2001.
In June 20, 2002, and July 1, 2002, letters to Dostalor, plaintiff requested the address of
Bellamy Creek Correctional Facility (IBC); the address and area code of Marquette Branch Prison
(MBP); and an informational parole booklet.  Rsp. Ex. P.1.  Handwritten notes suggest that Dostalor
responded to plaintiff's July 1, 2002, letter.

**d.       Plaintiff's Washtenaw County Circuit Court litigation**[21]

On or about September 18, 2001, while at AMF, plaintiff sent a petition to commence personal protection orders to the Washtenaw County Circuit Court.  Rsp. Ex. D.1.  In a September 25, 2001, letter the court informed plaintiff that his filings in Case No. 97-9053-FH did not comply.  Rsp. Ex. D.1.

On or about November 21 or 26, 2001, plaintiff (while at AMF) filed a civil complaint in Washtenaw County Circuit Court bearing Case No. 97-9053-FC.  Rsp. Ex. H; Rsp. Ex. Index of Exhibits.  By a June 25, 2002, document from Washtenaw County Court, Case No. GCW-02-219-CZ was dismissed without prejudice for failure to timely serve defendant(s) with process.  Rsp. Ex. P.[22]  In a July 19, 2002, letter, plaintiff wrote to Washtenaw County Circuit Court Judge David S. Swartz regarding a preliminary hearing examination in Case No. 97-9053-FC.  Rsp. Ex. P.2.

At some point, plaintiff drafted an amended complaint labeled with Case No. 97-9053-FC.  Mtn. Ex. A.  Based on several documents which are dated January 1, 2003, it appears that plaintiff was attempting to re-open Case No. 97-9053-FH:

•       Proofs of service of amended complaint and summonses.  Rsp. Ex. S.

---

[21]The differing case numbers in this section require some explanation.  According to the Washtenaw County Circuit Court - Office of the Clerk of the Court, CRW designates a criminal case and GCW designates a civil case.  The first two numbers are the year in which the case was filed, and these are followed by the actual case number.  Finally, the two letter designation describes the case type.  For example, FC and FH designate felonies and CZ designates a type of civil case.

[22]Although the copy of this exhibit is difficult to read, it appears that this dismissal was made on the basis of M.C.R. 2.102(E)(2), which provides:  "After the time stated in subrule (E)(1), the clerk shall examine the court records and enter an order dismissing the action as to a defendant who has not been served with process or submitted to the court's jurisdiction. The clerk's failure to enter a dismissal order does not continue an action deemed dismissed."

16

- Motion for leave to take Brodus'[23] deposition.  Rsp. Ex. R.
- Deposition of non-party witness Brodus (Questions 1-65).  Rsp. Ex. R.4.
- Deposition notice for Jack Dekoven.  Rsp. Ex. R.5.
- Deposition of Dekoven (Questions 1-33).  Rsp. Ex. R.6.
- Affidavit/declaration in support of preliminary examination (signed November 20, 2002).  Rsp. Ex. R.7.
- Witness list for preliminary examination.  Rsp. Ex. R.8.

Plaintiff also filed a January 6, 2003, request for production of documents, Rsp. Ex. R.9. Furthermore, on or about January 14, 2003, plaintiff filed a motion for issuance of subpoena to Warden Hofbauer and prisoner Dekoven, Rsp. Ex. R.2; a subpoena duces tecum for Brodus, Rsp. Ex. R.10; a subpoena duces tecum for Brodus, Rsp. Ex. R.3; and an affidavit in support of motion for subpoenas.  Rsp. Ex. R.1.  Additionally, a January 20, 2003, motion for production of materials was signed on March 26, 2003.  Rsp. Ex. T.[24]

On or about May 9, 2003, defense counsel filed a praecipe for motion for summary disposition in Case No. GCW 02-219-CZ.  Rsp. Ex. U.  "[D]efendants moved for summary disposition pursuant to MCR 2.116(c)(3) on the basis of improper service and had prepared a Proposed Order indicating a dismissal without prejudice."  Mtn. Attach. Soros Affid. ¶ 3.[25]

In a letter to plaintiff dated May 28, 2003, Washtenaw County Circuit Court Judge David S. Swartz acknowledged plaintiff's motion for extension of time to respond to the motion for

---

[23]Plaintiff claims he wrote three letters to Brodus requesting protection and removal; however, the warden defendants "refused to act."  Compl. at 4 ¶ 11.

[24]In a letter dated March 26, 2003, plaintiff wrote to Litigation Coordinator Whalen regarding depositions, subpoenas, and an information request.  Rsp. Ex. T.
Plaintiff claims that officer Goodreau took plaintiff's motion for summary judgment on April 25-27, 2003.  Plaintiff claims it was not returned to him even though officer Burke directed officer Goodreau "to return the [p]laintiff's Jury proce[e]dings and sketches and [his copy of the dispositive motion]."  Rsp. Ex. DD ¶ 2.

[25]The docket only contains the first page of an affidavit by attorney Allan J. Soros.

summary disposition in Case No. GCW-02-219-CZ; informed plaintiff that the motion was set

for hearing on June 18, 2003; informed plaintiff that his motion was filed under the wrong case

number (CRW-97-953-FC); and directed plaintiff to file all further pleadings under Case

Number GCW-02-219-CZ.  Mtn. Ex. A(1).[26]  On or about June 6, 2003, plaintiff filed a motion

for voluntary dismissal/notification of proposed adjournment for hearing in Case No. GCW 02-

219-CZ.  Rsp. Ex. U.1.

On June 18, 2003, there was a hearing on defendants' motion for summary disposition.

The state court ordered that plaintiff's complaint be dismissed with prejudice.  At the state

court's direction, "the wording on [d]efendants' proposed order was changed to indicate that the

action was being dismissed with prejudice."  Mtn. Attach. Soros Affid. ¶¶ 5, 6.[27]  The order

provided that "this decision resolves the last pending claim and closes the case."  Mtn. Ex. B at

2.[28]  Plaintiff claims he was not properly notified of this hearing and takes issue with Judge

Swartz' ruling.  Rsp. Ex. DD ¶ 4.[29]

---

[26]Apparently, this letter was mailed to plaintiff the following day.  Rsp. Ex. U.1 (May 29, 2003, postmark from Washtenaw County Circuit Court Judge David S. Swartz to plaintiff).

[27]It appears that plaintiff contends that Baraga Officer Maki is withholding three months' pay ($120.00) in retaliation for plaintiff beating an April 27, 2003 ticket issued by Goodreau.  Compl. at 9-10 ¶ 20.  Plaintiff also mentions a July 11, 2003, assault by Morgan, Burke, and Chipman, and a threat to take plaintiff's legal work.  Allegedly, plaintiff is in segregation following the Morgan assault.  Compl. at 9-10 ¶ 20.
This report does not address these claims, as the individuals mentioned (Maki, Goodreau, Morgan, Burke, and Chipman) are not named as defendants in the instant case.

[28]This statement was made in compliance with M.C.R. 2.602(A)(3), which provides that "Each judgment must state, immediately preceding the judge's signature, whether it resolves the last pending claim and closes the case. Such a statement must also appear on any other order that disposes of the last pending claim and closes the case."

[29]Plaintiff also mentions an assault which occurred at the Western Wayne Correctional
(continued...)

18

**2.      Only defendants Dama, Jackson, Mohrman, Tanario, Puckett, and Miers are properly before this Court.**

Appearances have only been filed on behalf of defendants Dama, Jackson, Mohrman, Tanario, Puckett, and Miers.  (Doc. Entries 9, 21, 25, and 28).  Apparently, defendants Edward Lintz (*see* Doc. Ent. 13), Katherine Smith (*see* Doc. Ent. 14), Schmedding (*see* Doc. Ent. 15), Baptiste (*see* Doc. Ent. 16), Marshall (*see* Doc. Ent. 17), Jack Hall, Richard Carpenter (*see* Doc. Ent. 7), Ezrow (*see* Doc. Ent. 18), and Burnett (*see* Doc. Ent. 19) have not been served.  Furthermore, it does not appear that defendants Cerroni, the 10 E.M.T.s, or Commdure have been served.

Pursuant to Fed. R. Civ. P. 4(m), plaintiff should have served defendants with the instant complaint by January 23, 2004.  Therefore, the Court does not have jurisdiction over the unserved, named defendants.  *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969) ("The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant.").  Therefore, the Court may wish to enter an order requiring plaintiff to show cause why the complaint against the unserved defendants should not be dismissed for failure to comply with Fed. R. Civ. P. 4(m).

---

[29](...continued)
Facility (WCF).  However, the date of the assault at WCF is typed over and is therefore unclear.  He claims he received eight (8) major misconduct tickets and was transferred to HVM.  Plaintiff also claims he filed a complaint which was prematurely dismissed even though he filed a WCF grievance at the same time.  Rsp. Ex. DD ¶ 6.

According to a January 6, 2005, article on the MDOC website (www.michgan.gov/corrections), WCF has closed and the transfer of inmates and staff to the Huron Valley Complex was completed in December 2004.  It appears that plaintiff is referring to a recent assault, as he states that WCF "was shut down immediately after the incident[.]" Rsp. Ex. DD ¶ 6.

3.    **The Court should not grant defendants' motion on the basis that plaintiff's claims against Mohrman, Dama, Tanario, and Meier, are "barred by the doctrine of *res judicata*."**

In *Ramzan v. Huron Valley Men's Facility*, Case No. GCW-02-219-CZ (Washtenaw County Circuit Court), plaintiff named Lintz, Schmedding, Miers, Smith, Tanario, Baptiste, Ryder, Tessmer, Carpenter, Mohrman, Commdure, Hall, Damas (presumably Dama), Ezrow, and Burnett, and nine Mobil unit response officers whose names were unknown (¶ 6), as defendants in his state court amended complaint.  Mtn. Ex. A at 3-5 ¶¶ 4-13 ("Amended Complaint labeled with Case No. 97-9053-FC).  The "facts incident to crimes charged" span the period from February 5, 2000 to July 18, 2000.  Mtn. Ex. A at 6-10 ¶¶ 16-24.  Plaintiff described in detail the alleged events of July 18, 2000.  Mtn. Ex. A at 11-17 ¶¶ 25-32, 35-36.  Also, he described the alleged events of July 19, 2000 to July 20, 2000.  Mtn. Ex. A at 16-21 ¶¶ 34, 37-44.  Furthermore, he alleged interference with his ticket appeal, claimed lack of medical treatment, alleged denials of his requests for grievances, described symptoms from which he suffers, mentioned a March 16, 2001 attack, and took issue with Dama and Hall's investigation.  Mtn. Ex. A at 21-24 ¶¶ 45-56.

In the state court amended complaint, plaintiff claimed that Dama defrauded a state investigation; was negligent as a detective; and was involved in a conspiracy.  Mtn. Ex. A at 8 ¶ 21.  Plaintiff's amended complaint also mentioned misuse of force - secretive confinement; felonious assault;[30] hate crimes; torture,[31] use of chemical weapon/toxic munition;[32] conspiracy

---

[30]Based upon Mich. Comp. Laws § 750.84.

[31]Based in part upon 18 U.S.C. § 2340A.

[32]Based in part upon 18 U.S.C. § 229.

20

to commit murder; multiple penetrations;[33] poisoning medicine;[34] first degree criminal sexual

conduct;[35] and denial of due process.  Mtn. Ex. A at 10-11, 17.  Plaintiff's claims for relief

included Eighth and Fourteenth Amendment violations, as well as torts and criminal acts.  Mtn.

Ex. A at 24-26 ¶¶ 57-63.[36]

Defendant(s) filed a motion for summary disposition.  Mtn. Ex. A(1).  On June 18, 2003,

Washtenaw County Circuit Court Judge David S. Swartz entered an order granting defendants'

motion for summary disposition and dismissing the case.  Mtn. Ex. B.

Defendants argue that the instant case "is barred by the doctrine of *res judicata*."  Mtn.

Br. at 3-4.  According to defendants, "this action is merely a re-filing of an action previously

litigated in the Circuit Court for the County of Washtenaw[,]" and the state court action asserted

"the same allegations and claims set forth in this action."  Mtn. Br. at 2, 3.  Defendants maintain

that the state court case was dismissed with prejudice three months before the instant case was

filed; contend that "the doctrine of *res judicata* bars the plaintiff from relitigating those claims in

this action[;]" and request that the Court enter judgment as a matter of law.  Mtn. Br. at 3-4.

"The rules of res judicata actually comprise two doctrines concerning the preclusive

effect of a prior adjudication, claim preclusion and issue preclusion. The general rule of claim

preclusion, or true res judicata, is that a valid and final judgment on a claim precludes a second

---

[33]Based upon *People v. Payne*, 90 Mich. App. 713, 282 N.W.2d 456 (1979).

[34]Based upon Mich. Comp. Laws § 750.436.

[35]Based upon Mich. Comp. Laws § 750.520b.

[36]Also, he sought a declaratory judgment, injunctions, compensatory damages, any other relief to which he might be entitled, an immediate preliminary examination, and discovery.  Mtn. Ex. A at 26-30.

action on that claim or any part of it. Claim preclusion applies not only to bar the parties from relitigating issues that were *actually* litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action." *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996) (citing cases) (emphasis in original).

At this time, the Court should not grant defendants' motion on the basis that it is barred by the doctrine of res judicata. First, defendants have not submitted a copy of the state court brief to evidence the bases on which summary disposition was sought.[37] Second, defendants have not submitted a copy of the June 18, 2003 hearing transcript to enable this Court to determine the basis or bases on which the motion for summary disposition was granted. Third, even though the state court's June 18, 2003 order of dismissal was apparently entered with prejudice,[38] the case law cited by defendants does not convince me that Michigan courts would give preclusive effect to an order of dismissal on the basis of M.C.R. 2.116(c)(3), even if it was

---

[37]Apparently defendants "moved for summary disposition pursuant to MCR 2.116(c)(3) on the basis of improper service[.]"  Mtn. Attach. Soros Affid. ¶ 3.  M.C.R. 2.116, which governs summary disposition, provides that a motion for summary disposition may be based on insufficient service of process.  M.C.R. 2.116(c)(3).

[38]The June 18, 2003, order states that the action is "DISMISSED without prejudice[,]" and the "out" portion of the word has a line through it.  The Soros affidavit explains that the state court ordered that plaintiff's complaint be dismissed with prejudice and directed that the wording on the proposed ordered be changed to indicate that the complaint was being dismissed with prejudice. Mtn. Ex. B; Mtn. Attach. Soros Affid. ¶¶ 5, 6.  Therefore, it appears that the correction of the order was intentional.

entered with prejudice.[39]  Fourth, the June 18, 2003, state court order does not provide a reason

for the court's dismissal of the action with prejudice.[40]

At this time, the Court cannot be certain about the reasons for the entry of dismissal with

prejudice.  Therefore, the Court should deny defendants' motion for summary judgment insofar

as it asserts that plaintiff's claims are barred by the doctrine of res judicata - therefore

withholding the extreme effect of denying federal review of plaintiff's claims - until the reasons

for the state court's ruling are entirely clear.

**4.     The statute of limitations bars plaintiff's claims against defendants Jackson, Tanario, Meier, and Puckett.**

Defendants argue that "[p]laintiff's action is barred by the statute of limitations."  Mtn.

Br. at 4.  The Supreme Court has considered "the most appropriate state statute of limitations to

apply to claims enforceable . . . " under 42 U.S.C. § 1983 and has held that such claims "are best

characterized as personal injury actions."  *Wilson v. Garcia*, 471 U.S. 261, 262, 280 (1985).  In

Michigan, "[t]he period of limitations is 3 years after the time of the death or injury for all other

actions to recover damages for the death of a person, or for injury to a person or property."

---

[39]"[T]he full faith and credit statute, 28 U.S.C. § 1738, requires a federal court to give a state court judgment the same preclusive effect such judgment would have in a state court[.]"  *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 662 (6th Cir. 1990) (internal footnote omitted).  "The decision whether to grant dismissal with or without prejudice, by definition, determines whether a party may refile a claim or whether the claim is permanently barred."  *ABB Paint Finishing, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa*, 223 Mich.App. 559, 562, 567 N.W.2d 456, 458 (1997) (citing *Thomas v. Michigan Employment Security Comm.*, 154 Mich.App. 736, 742, 398 N.W.2d 514 (1986)).

[40]For example, in *Cronin v. Ohle*, No. 212817, 1999 WL 33433528 (Mich. App. 1999) (unpublished), the Michigan Court of Appeals affirmed the trial court's decision granting defendant's dispositive motion pursuant to M.C.R. 2.116(C)(3) after plaintiff had been given two extensions of time in which to serve the complaint and summons.  *Cronin*, 1999 WL 33433528, *1.  Apparently, the dismissal was without prejudice.  *Id*. *2.

Mich. Comp. Laws § 600.5805(10). Defendants state that, "[s]ince plaintiff has sued the defendants regarding events allegedly occurring between February and July 2000, he was required to file his lawsuit no later than July 2003." Mtn. Br. at 4.

The instant complaint was filed on September 25, 2003. Absent tolling, the Court should conclude that the statute of limitations bars plaintiff's claims as to defendants Jackson, Tanario, Meier, and likely Puckett. To the extent plaintiff's complaint against defendant Jackson (the July 20, 2000 hearing officer) is based upon the July 20, 2000, hearing, Compl. at 12-13 ¶ 26, plaintiff's complaint should have been filed by July 20, 2003. To the extent plaintiff's complaint against defendants Tanario and Meier (Miers) (an HVM R.U.M.) is based upon the alleged July 18, 2000, assault, Compl. at 12 ¶ 25, plaintiff's complaint should have been filed by July 18, 2003.[41] To the extent plaintiff's complaint against defendant Puckett (presumably an officer at HVM) is based upon his statement regarding July 18, 2000 and/or a failure to help plaintiff, Compl. at 12 ¶ 24, the complaint should have been filed within three years from the date of these actions. For purposes of this report, I assume these actions took place shortly after the July 18, 2000, incident, as plaintiff was transferred to RMI on July 25, 2000, Rsp. Ex. C.1. Therefore,

_____

[41]Plaintiff also appears to allege a denial of medical care and full-scale obstruction of justice against defendants Meier and Tanario. Compl. at 12 ¶ 25. Furthermore, plaintiff claims that defendant Tanario (along with unserved, named defendant Commdure) violated plaintiff's Eighth and Fourteenth Amendment rights by "prevent[ing] treatment and recording of the [p]laintiff's injuries, conceal[ing] the 5 capitol offenses, [perjuring] willful and false evidence was anti-defamatory, obstruct[ing] administrative [h]earings and official [i]nvestigation, caus[ing] prolonged pain and suffering with untreated injury to the [p]laintiff, stat[ing] false date and time to the re[c]ord of 5:30 p.m. (7-19-00) to 7-18-00 events and perjury there of[.]" Compl. at 13 ¶ 27.

This report assumes that the timing of these allegations against defendants Meier and Tanario occurred while plaintiff was incarcerated at HVM. On July 25, 2000, plaintiff "was transferred to RMI and placed into Administrative Segregation." Rsp. Ex. C.1. Therefore, the Court should conclude that these claims against Meier and Tanario are also barred by the statute of limitations, as any such claims should have been filed by July 25, 2003.

24

plaintiff would have been required to file his complaint against Puckett by July 25, 2003 in order to abide by the statute of limitations.[42]

      Plaintiff's response exhibits do not argue that the grievance process tolled the statute of limitations such that his complaint was timely. *See Owens v. Naylor*, M.D., No. 03-1055, 2003 WL 21782608, **2 (6th Cir. 2003) (unpublished) (citing *Brown v. Morgan*, 209 F.3d 595, 596-597 (6th Cir. 2000)) ("[T]he statute of limitations is tolled during the period of exhaustion[.]").[43] Nor do plaintiff's response exhibits argue that he is entitled to equitable tolling. *See Howard v. Rea*, No. 03-6473, 2004 WL 2203573, **2 (6th Cir. Sept. 17, 2004) ("The statute of limitations may be equitably tolled, however, if the plaintiff lacked actual or constructive notice of the filing

---

[42]Plaintiff claims against Mohrman appear to be based upon the February 25, 2002 hearing, Compl. ¶ 26, and plaintiff's claims against defendant Dama appear to be based upon the Michigan State Police Department investigation which appears to have begun during Fall 2001, Compl. at ¶ 29. Therefore, plaintiff's September 25, 2003, complaint against defendants Mohrman and Dama were likely filed before the three-year statute of limitations had expired.

[43]Plaintiff's grievance is dated December 20, 2001 and was received by the grievance coordinator's office on January 2, 2002. The Step I grievance response memoranda are dated January 2, 2002, and January 15, 2004. Mtn. Ex. E; see also Rsp. Ex. I.1. In light of plaintiff's claims that he was denied grievance forms, it is difficult to discern the period of exhaustion that might arguably toll the statute of limitations as to plaintiff's claims against defendants Meier and Tanario.

    It is not even clear whether a grievance appeal process that had taken a timely course would have sufficiently tolled the statute. For example, plaintiff would have had five business days from receipt of receipt of a Step I response within which to request a grievance appeal form; five business days from receipt of the appeal form within which to send the appeal to the Step II grievance coordinator; and, absent an extension, a Step II appeal response would have been due within 15 business days following receipt of the grievance appeal. MDOC PD 03.02.130 ¶¶ DD-EE. In addition to these twenty-five days, plaintiff would have had ten business days from receipt of a Step II response within which to send a Step III appeal. MDOC PD 03.02.130 ¶ HH. However, the policy does not set forth a due date for a Step III response. MDOC PD 03.02.130 ¶ II.

    In light of the foregoing, it is not clear whether an ordinary course of exhaustion would have sufficiently tolled the statute from July 18-20, 2003 to September 25, 2003.

requirements, diligently pursued his rights, tolling would not prejudice the defendant, and the plaintiff was reasonably ignorant of the notice requirement.").[44]

5.      **Plaintiff has not exhausted his administrative remedies as to served defendants Jackson, Mohrman, Dama, and Puckett.  At most, he has exhausted claims only as to served defendants Meier and Tanario.  Therefore, the Court could dismiss plaintiff's complaint without prejudice.**

Defendant argues that plaintiff has failed to satisfied the administrative exhaustion requirement set forth in 42 U.S.C. § 1997e(a).  Mtn. Br. at 8-9.  Section 1997e governs 42 U.S.C. § 1983 suits by prisoners.  It states, in pertinent part, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement

---

[44]Incidentally, defendants present a defensive tolling argument - that plaintiff's state court action "did not operate to toll the [statute] of limitations."  Mtn. Br. at 4.  However, at this time, the Court should refrain from addressing this argument.

"[F]ederal courts routinely measure the timeliness of federal civil rights suits by state law." *Hardin v. Straub*, 490 U.S. 536, 538 (1989).  "Pursuant to the tolling statute, M.C.L. § 600.5856 . . . , the period of limitation was tolled during the pendency of plaintiff's original lawsuit, which was dismissed without prejudice."  *Yeo v. State Farm Fire and Cas. Ins. Co.*, 242 Mich.App. 483, 484, 618 N.W.2d 916, 916 (2000).  *See also Kalasho v. City of Eastpointe*, No. 02-1988, 2003 WL 21277352, **1 (6th Cir. June 2, 2003) (unpublished) (citing *Yeo v. State Farm Fire & Cas. Ins. Co.*, 242 Mich.App. 483, 618 N.W.2d 916, 916 (2000)).  Citing *Kalasho*, defendants argue that "plaintiff's state court action was dismissed with prejudice; thus, the earlier action did not toll the limitations period."  Mtn. Br. at 4-5.

However, if, as defendants claim, the state court motion for summary judgment was based upon improper service, Mtn. Attach. Soros Affid. ¶ 3, and if the June 18, 2003, state court order dismissing the case was based upon improper service, then it is clear that plaintiff's claims were not adjudicated on the merits.  Therefore, as was the case in Section II.D.3 (res judicata) of this report, the case law cited by defendants does not convince me that Michigan courts would not toll the statute of limitations where an order of dismissal on the basis of M.C.R. 2.116(c)(3) was entered in a prior case, even if the order was entered with prejudice.

applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

With regard to the dismissal of prisoner lawsuits, 42 U.S.C. § 1997e(c) provides:

(1) The court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.

(2) In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.

42 U.S.C. § 1997e(c)(1)-(2). "Federal courts should not adjudicate any such claim until after exhaustion unless the complaint satisfies § 1997e(c)(2)." *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998). There are several reasons why the Court should conclude that plaintiff's claims have not been exhausted:

    **a.**    Plaintiff did not attach evidence of his grievance to his complaint. As the Sixth Circuit has stated, plaintiff has the burden to prove that he or she has exhausted his or her administrative remedies. In *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998) (per curiam), the Sixth Circuit held that under 42 U.S.C. § 1997e(a), "prisoners filing § 1983 cases involving prison conditions must allege and show that they have exhausted all available state administrative remedies. A prisoner should attach to his § 1983 complaint the administrative

decision, if available, showing the administrative disposition of his complaint."  *Brown*, 139 F.3d at 1103.[45]

The Michigan Department of Corrections has a three-step grievance process.  Mtn. Ex. D (MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), effective November 1, 2000); Mtn. Attach. (MDOC PD 03.02.130, effective December 19, 2003).  The exhibits to defendants motion do show that on December 20, 2001, plaintiff completed a Step I grievance form in which he claimed that, on July 18, 2000, defendants Lintz, Miers, Schmeding, Smith, and Tanario "beat, tortured, attempted to murder and raped [him] with a 5" brass metal object." HVM-02-01-0001-28e.  Rsp. Ex. I; Mtn. Ex. E.  The grievance coordinator's office received plaintiff's grievance on January 2, 2002; Grievance Coordinator Fitzmaurice signed the grievance response the same day; dismissed defendant Ray reviewed the response; and Fitzmaurice rejected the grievance as untimely on January 2, 2002, and January 15, 2004.  Mtn. Ex. E; Rsp. Ex. I.1.  However, according to James Armstrong, MDOC Prisoner Affairs Section Manager, plaintiff "has not filed a Step III grievance with respect to any claim raised in this case."  Mtn. Ex. Armstrong Affid. ¶ 10.

**b.**      In the absence of documentation, plaintiff is required to describe with specificity how he has exhausted grievance HVM-02-01-0001-28e.  In *Knuckles El v. Toombs*, 215 F.3d

---

[45]The Sixth Circuit appears to be alone in placing the burden on plaintiffs to show exhaustion.  The other circuit courts that have considered the question characterize lack of exhaustion as an affirmative defense.  See *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999); *Jenkins v. Haubert*, 179 F.3d 19, 29 (2d Cir. 1999); *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998).  Thus, in those circuits the defendant bears the burden of establishing that the claims are not exhausted, see *Massey*, 196 F.3d at 735, and the defense is subject to waiver and forfeiture, see *Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 536 (7th Cir. 1999); *Wendell*, 162 F.3d at 890.

640 (6th Cir. 2000), the Sixth Circuit stated that "a prisoner must plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome. The reason for the requirement to show with specificity both the claims presented and the fact of exhaustion is so that the district court may intelligently decide if the issues raised can be decided on the merits." *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000).  Plaintiff's complaint does not allege that he exhausted his administrative remedies.  Instead, as discussed below, plaintiff's complaint alleges that he was denied grievance appeal forms.  Compl. at 10 ¶ 21.

 **c.** Plaintiff's claims regarding denial of forms do not relieve him of the requirement that he exhaust his administrative remedies pursuant to § 1997e.  Plaintiff claims he wrote HVM wardens and OPH (Office of Policy and Hearings) office requesting ticket appeals and an RMI grievance, but received back empty September 26, 2000, and October 6, 2000, letters on October 18, 2000.  Compl. at 10 ¶ 21.  He claims that defendant Jackson and HVM wardens "effectively denied him his tickets appeals, falsely punished him, and completely denied him his ability to exhaust his administrative remedies."  Compl. at 10 ¶ 21.  Notwithstanding this allegation, plaintiff later filed his December 20, 2001 Step I grievance.

 Plaintiff claims he wrote a grievance on December 26, 2001, and he was denied Step II forms on February 16, 2002, by R Fitzsimmons.  However, he suggests that he ultimately sent a Step II grievance.  Compl. at 10 ¶ 21.  Also, he states that "[m]ultiple letters requesting grievance documents from Richard Stapleton have all been denied at the OPH, and the [p]laintiff states that these three parties [presumably defendant Jackson, defendant Dama, and Stapleton]

are all in agency with each other in denying evidence.  The 11-6-01 Dama[] evidence/camera denial and this was unlawful su[p]pression."  Compl. at 11 ¶ 21.

Defendants argue that "plaintiff waited almost a year and a half after the alleged incident, then filed a Step I grievance [HVM-02-01-0001-28e].  The Step I filing was rejected as untimely, and plaintiff did not pursue an appeal of the rejection as permitted by MDOC policy."  Mtn. Br. at 8-9 (footnote omitted).  Therefore, defendants argue, "plaintiff abandoned the grievance process and cannot now claim that administrative remedies were not available."  Mtn. Br. at 9.

Two recent opinions from the Sixth Circuit shed light on the issue of whether plaintiff's claims that he was denied grievance forms relieve him of the requirement that he exhaust his administrative remedies pursuant to § 1997e.  In *Fitts v. Faghihnia*, No. 00-2272, 2001 WL 1298837 (6th Cir. Aug. 7, 2001) (unpublished), the Court stated:

> Fitts did not meet his burden of demonstrating that he exhausted all administrative remedies available to him through Michigan's three-step administrative process for raising complaints about prison conditions.  *See* Michigan Department of Corrections Policy Directive No. 03.02.130 (June 5, 1995); Michigan Department of Corrections Operating Procedure No. OP-DWA- 62.01 (June 5, 1995).  Fitts neither attached any copies of grievances or administrative dispositions, nor did he describe with specificity the administrative proceeding and its outcome. Instead, Fitts generally alleged that unit staff denied him grievance forms and that he instead sent letters to numerous prison officials, raising issues "parallel" to those in his complaint. In his objections to the magistrate judge's report, Fitts further alleged that he no longer had any copies because he had sent all of his copies to Jesse Jackson. These allegations are insufficient to demonstrate compliance with the statutory requirements of § 1997e.

*Fitts*, 2001 WL 1298837, *2.  Subsequently, in *Jones v. Smith*, 266 F.3d 399 (6th Cir. Sept. 21, 2001), the Court stated:

> . . . Jones argues that it was futile to require exhaustion in this case because he was denied a grievance form. . . . Jones failed to demonstrate that he had exhausted his administrative remedies, *see Brown v. Toombs,* 139 F.3d 1102, 1104 (6th Cir.1998), admitting that no grievance had been filed because his

30

> counselor did not give him a grievance form. . . . He does not allege that there was
> no other source for obtaining a grievance form or that he made any other attempt
> to obtain a form or to file a grievance without a form.  Under these circumstances,
> the dismissal without prejudice of this complaint was proper and is accordingly
> affirmed.  Rule 34(j)(2)©, Rules of the Sixth Circuit.

*Jones*, 266 F.3d at 400.  *See also Anderson v. Meeks*, No. 03-5312, 2003 WL 22435648, **1 (6th Cir. 2003) (unpublished) ("This court has held that it is insufficient to allege that grievance forms were denied in order to excuse the exhaustion of administrative remedies; a prisoner must attempt to file a grievance without a form.") (citing *Jones v. Smith*, 266 F.3d 399 (6th Cir.2001)); *Martin v. Johnson*, No. 02-2231, 2003 WL 21540982, **1 (6th Cir. 2003) (unpublished) ("In this case, Martin alleged only that he had requested a grievance form to file concerning the use of a chemical agent in removing him from his cell, but that he did not receive a form. This court has also held that such an allegation is insufficient to establish exhaustion.") (citing *Jones v. Smith*, 266 F.3d 399, 400 (6th Cir.2001)).

Plaintiff disputes that he abandoned the grievance process and contends that there has been foul play by HVM grievance officers and wardens.  Rsp. Ex. DD ¶ 2.  Assuming plaintiff's allegations to be true, it appears that plaintiff tried to get grievance appeal forms from HVM while he was incarcerated at AMF.  For example, in a letter dated February 24, 2002, plaintiff wrote to Richard Fitzsimmons of HVM mentioning plaintiff's allegedly delayed receipt of the Step I grievance rejection; requesting an appeal of HVM-02-01-0001-28e; and requesting a copy of all grievances plaintiff wrote to HVM.  Apparently, plaintiff's request was not granted.  Rsp. Exhibits M and N; Rsp. Ex. DD ¶ 1.  Also, plaintiff apparently sent HVM a Step II appeal on

July 5, 2003, but it had not been answered.[46]  In a September 2003, letter to J. Ansell of AMF,

plaintiff requested a blank Step II grievance form for the HVM grievance.  According to

plaintiff's letter, he had twice requested Step II forms from HVM.  (Rsp. Ex. V).  Additionally,

plaintiff has provided affidavits regarding grievances.  In a November 4, 2003, affidavit, plaintiff

mentioned a Step II grievance request to Fitzsimmons at HVM regarding HVM-02-01-0001-28e

and claimed that Fitzsimmons did not respond.[47]  Rsp. Ex. V.2.  Furthermore, plaintiff provides a

January 2005 affidavit regarding grievances.  Rsp. Ex. DD.[48]  Moreover, plaintiff apparently

complained to an agency regarding Stapleton's lack of response to plaintiff's Step III grievance

request.[49]

Considering these examples, it is clear that plaintiff made some efforts to obtain

grievance appeal forms for HVM-02-01-0001-28e.  However, even assuming, *arguendo*, that

plaintiff's apparent attempts to obtain grievance appeal forms relieve him of the requirement to

---

[46]Plaintiff claims the grievance appeal was "unlawfully not answered and seized by R Fitzsimmons or R. Fitzmaurice or R. Jackson."  Rsp. Ex. DD ¶ 3.

[47]The affidavit sets forth the alleged substance of plaintiff's Step II appeal.  The copy of this affidavit is difficult to read, but apparently states:  "I filed a timely request for my step I grievance, and September and October 2000 Step II request[s] are denied, mailed back empty; Assault grievance can be filed directly to Step III and I [have] been retaliated against for each time attempting [to] complete any grievance process at any step.  Note[:]  Plaintiff 2-24-02 (DENIAL of Step II grievance) request for appeal sent to Fritz Jackson and [] Fitzsimmons at [HVM]."  Rsp. Ex. V.2.

[48]In this affidavit, plaintiff describes various efforts to exhaust his HVM grievance.  For example, he contends that, following his June 18, 2003, state court hearing, he sent another Step II grievance to HVM, but it was ignored.  According to plaintiff, certain officials "did not respond and used the [February 25, 2002] ticket hearing by Thomas Mohrman . . . as an excuse and reason not to answer [.]"  Rsp. Ex. DD ¶ 1.

[49]Response Exhibit N.1 contains no documents but was purportedly a letter to MI-CURE Advocacy in part regarding Stapleton's failure to respond to Step III grievance request for 02-01-0001-xx-28e.  Rsp. Ex. Index of Exhibits.

exhaust administrative remedies under the *Fitts* and *Jones* decisions, HVM-02-01-0001-28e would only exhaust plaintiff's administrative remedies as to served defendants Meiers and Tanario, as explained below.

> **d.**    Even if grievance HVM-02-01-0001-28e had been appealed through Step III, plaintiff only specifically mentions served defendants Meier and Tanario (as well as unserved defendants Lintz, Schmeding, and Smith) in the Step I grievance.  Two Sixth Circuit cases are instructive on the point that defendants must be grieved at Step I of the grievance process.  In *Curry v. Scott*, 249 F.3d 493 (6th Cir. 2001), the Sixth Circuit affirmed the trial court's dismissal of plaintiff's claims against a defendant named Howard because he was not mentioned in plaintiff's grievances.  *Curry*, 249 F.3d at 505.  In so doing, the Court stated that "[t]he claim against Howard . . . is a separate claim, against a separate individual, premised on a separate and independent legal theory."  *Id.* at 505.[50]  "The requirement that a prisoner file a grievance against the person he ultimately seeks to sue does not impose a heightened pleading requirement upon would-be § 1983 plaintiffs.  It only assures, as envisioned under the PLRA, that the prison administrative system has a chance to deal with claims against prison personnel before those complaints reach federal court."  *Id.*

In *Burton v. Jones*, 321 F.3d 569 (6th Cir. Feb. 28, 2003), the Sixth Circuit stated:

> We understand [the MDOC grievance] policies to require that a prisoner seeking to administratively exhaust a claim against a prison official describe the alleged mistreatment or misconduct at Step I of the grievance process.  By negative implication, we understand these policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or

---

[50]"Howard [was] the corrections officer who witnessed Scott's assault on them and allegedly failed to intervene."  *Curry v. Scott*, 249 F.3d 493, 504 (6th Cir. 2001).

misconduct on the part of that official is made at Step II or Step III of the grievance process. We do not, however, understand these policies to preclude a prisoner from presenting additional factual detail at Step II and Step III that clarifies an allegation made at Step I as a means of justifying an appeal.

*Burton*, 321 F.3d at 574 (internal citation omitted). Furthermore, the Court stated:

[F]or a court to find that a prisoner has administratively exhausted a claim against a particular defendant, a prisoner must have alleged mistreatment or misconduct on the part of the defendant at Step I of the grievance process. In describing the alleged mistreatment or misconduct, however, we would not require a prisoner's grievance to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory. Rather, *it is sufficient for a court to find that a prisoner's Step I problem statement gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint.*

*Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) (emphasis added). Therefore, even if it had been appealed through Step III, grievance HVM-02-01-0001-28e does not exhaust plaintiff's claims against defendants unnamed in the grievance - significantly four (Jackson, Mohrman, Dama, and Puckett) of the six defendants bringing the instant motion. At most, appeal through Step III of grievance HVM-02-01-0001-28e might have exhausted plaintiff's claims against served defendants Meier and Tanario. Mtn. Ex. E.

**e.**     Even if grievance HVM-02-01-0001-28e had been appealed through Step III and plaintiff's claims against Meier and Tanario had been exhausted, the claims against Jackson, Mohrman, Dama, and Puckett are unexhausted. Recently, the Sixth Circuit held that "total exhaustion is required under the PLRA." *Jones Bey v. Johnson, et al.*, __ F.3d __, No. 02-00101, at 5 (6th Cir. Apr. 27, 2005). Therefore, the Court could dismiss plaintiff's complaint without prejudice.

34

      **f.**      The evidence of other grievances does not support a conclusion that plaintiff has exhausted his administrative remedies with regard to the claims made in the instant complaint:

- In a June 12, 2001 memorandum regarding **RMI-01-05-1107-26A**, RUM E. Hosey reviewed staff statements and paperwork in plaintiff's file.  Rsp. Ex. C.1.[51]
- Request to Stapleton for Step III appeals for **AMF-02-02-00482-12I** and **RMI-01-05-1107-26A**.  Rsp. Ex. Q.
- Request to Stapleton for Step III appeal for **AMF-02-02-00484-17I**.  Rsp. Ex. Q.1.[52]
- On February 14, 2002, while at AMF, plaintiff completed a Step I grievance form regarding R.U.M. LA Land.  Rsp. Ex. L.
- A June 28, 2002, handwritten note regarding **AMF-02-05-01791-27A**.  Rsp. Ex. O; Rsp. Ex. Index of Exhibits.
- On July 22, 2002, plaintiff completed a Step I grievance regarding May and June 2002 incidents which was apparently assigned grievance identifier **AMF-02-07-02444-28E**. On July 30, 2002, LaPlante responded to the grievance and J. Ansell reviewed the grievance.  Rsp. Ex. P.3.
- In a June 25, 2003, letter to J. Ansell, plaintiff requested a Step II grievance for **03-06-01660-027e**.  Rsp. Ex. V.

During the events underlying his complaint, plaintiff was incarcerated at HVM.  Compl. at 3 ¶ 3. Other than the February 14, 2002, and the July 22, 2002, Step I grievance forms, it is difficult to discern the substance of these other grievances, because there do not appear to be copies of these Step I grievances in the record.  Furthermore, the February 14, 2002, and July 22, 2002, grievances, appear to concern actions which took place at AMF.  Therefore, they should not be construed as relating to the claims underlying the instant complaint.[53]

---

[51]In a notation on this exhibit, plaintiff alleges that R.U.M. Hosey is acting in concert with defendant Carpenter's July 22, 2000, decision.

[52]Plaintiff mentions sending a grievance on January 18, 2002; however, it is not clear whether he was referring to one of these (00482 or 00484) grievances.  Rsp. Ex. K at 3.

[53]Plaintiff has provided the Court with a copy of the February 2002 affidavit of Robbie

(continued...)

    **g.**     Plaintiff claims he sent a Step I grievance "with his original District Court (E.D.Mich.) Complaint[,]"[54] and that this grievance was rejected after the filing date. He also mentions a subsequent grievance which was answered too late; withheld by Pennell, Leutzow, and Burnett of AMF; and intentionally not answered until after a February 13, 2002, major misconduct ticket. Rsp. Ex. DD ¶ 1. To the extent plaintiff is referring to a Step I grievance filed simultaneously with the instant complaint, any such grievance would not satisfy the exhaustion requirement, because claims based upon grievances which were not exhausted prior to bringing suit are barred by the Sixth Circuit's cases. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (citing *Brown v. Toombs*, 139 F.3d 1102 (6th Cir. 1998), *cert. denied*, 525 U.S. 833, 119 (1998)) ("The plain language of the statute makes exhaustion a precondition to filing an action in federal court[.]"). *See also Baxter v. Rose*, 305 F.3d 486, 489 (6th Cir. 2002) (internal citation and footnote omitted) ("A plaintiff who fails to allege exhaustion of administrative remedies through 'particularized averments' does not state a claim on which relief may be granted, and his complaint must be dismissed *sua sponte*. Our rule in *McGore* [[*v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997)[55]]] requires that a plaintiff, who fails to make a

_____

[53](...continued)
Taylor (#158485). Rsp. Ex. J. The copy of this document is difficult to read, but it purportedly concerns late ticket delivery, internal affairs response, and grievance response 1-31-02 to 02-13-02. Rsp. Ex. Index of Exhibits. The significance of this attachment is not clear.

    [54]The Court assumes that plaintiff is referring to the instant case (filed September 25, 2003) rather than the Eastern District of Michigan case *Ramzan v. Louma, et al.*, Case No. 04-40098 (Flint) (filed May 17, 2004).

    [55]Another portion of the *McGore* decision has fallen under some criticism. *McGore* held, in part, that "[u]nder § 1915(b), the prisoner must pay the required filing fees regardless of the merits of the appeal." *McGore*, 114 F.3d at 610-611. Although the Sixth Circuit later recognized that *McGore*'s position differed from that of other circuits, the Court stated that "[t]he only fair
(continued...)

36

sufficient allegation of exhaustion in their initial complaint, also not be allowed to amend his

complaint to cure the defect.  If the plaintiff has exhausted his administrative remedies, he may

always refile his complaint and plead exhaustion with sufficient detail to meet our heightened

pleading requirement, assuming that the relevant statute of limitations has not run.").[56]

## III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within ten (10) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 147-

48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir.

1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).  Filing of objections that

raise some issues but fail to raise others with specificity, will not preserve all the objections a

party might have to this Report and Recommendation.  *Miller v. Currie*, 50 F.3d 373, 380 (6th

Cir. 1995); *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of

Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR

72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

---

[55](...continued)
interpretation of this language is that regardless of the 'good faith' of the appeal, a prisoner can
appeal a district court decision in forma pauperis if he pays the fee pursuant to the schedule of §
1915(b)."  *Starks v. Reno*, No. 98-3818, 2000 WL 353526, **3 (6th Cir. 2000) (unpublished).

[56]If the Court agrees with my foregoing recommendations, it need not address defendants'
arguments that "[p]laintiff's claims are barred as an improper collateral attack on his prison
disciplinary conviction and are not cognizable under 42 U.S.C. § 1983[,]" Mtn. Br. at 5-6 and that
they are shielded by immunity, Mtn. Br. at 6-8.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives_____

PAUL J. KOMIVES

UNITED STATES MAGISTRATE JUDGE

Dated May 11, 2005

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on Mayl 11, 2005.

s/Eddrey Butts_____

Case Manager